INTERNATIONAL SALES CO., INC. *v.* UNITED STATES

**No. 4398.**—Invoice dated Markneukirchen, Germany, April 8, 1935.
Certified April 9, 1935.

Entered at Baltimore, Md., March 5, 1936.
Entry No. 1398.

(Decided September 28, 1938)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

KINCHELOE, Judge: This appeal to reappraisement involves the dutiable value of merchandise which consists of three items of Hawaiian guitar strings known as firsts, seconds, and thirds, imported from Germany during the month of April 1935, and entered at the port of Baltimore. Said merchandise was entered at 40 cents per gross, United States currency, plus 2½ per centum consumption tax, and was appraised at 65 cents per gross, United States currency, plus tax. Counsel for both plaintiff and defendant claim export value as the correct basis for appraisal purposes of the instant merchandise.

The evidence for the plaintiff in this case consists of the testimony of A. Quall, president of the plaintiff firm, and Exhibit 4, which is an affidavit executed by Otto Schlosser, the shipper of the instant merchandise. The evidence of the defendant consists of Exhibit 5, a report of John P. Griebel, Treasury representative, of date August 12, 1935.

The said A. Quall testified in substance that he is the president of plaintiff; that his company's business is wholesale musical merchandise in Baltimore; that he has been engaged in that line of business off and on for 50 years (there was then filed samples of said merchandise as Exhibits 1, 2, and 3); that plaintiff purchases by letter and did this importation; that plaintiff has ordered different qualities of Hawaiian guitar strings and deals in different qualities from the same manufacturer; that the quality of the strings of the instant importation is the cheapest quality; that the price paid for the best quality plaintiff ordered was 65 cents per gross and that the price paid for the instant importation was 40 cents per gross (samples of the best quality purchased by the plaintiff from the same manufacturer in and around 1935 were marked in evidence as Illustrative Exhibits A, B, and C); that the main difference in the quality of the guitar strings as represented by Illustrative Exhibits A, B, and C, and Exhibits 1, 2, and 3, is the tension of the string; that in tuning up a string of the cheap quality

it will snap if slightly overturned; that the better quality stands more tension and naturally holds longer and is heavier in weight, and is manufactured with better workmanship. On cross-examination by the attorney for the defendant said witness testified that there was no difference in the prices between the strings known as firsts, seconds, and thirds of the instant merchandise; and that the only difference between said firsts, seconds, and thirds of the instant merchandise is that one is slightly heavier than the other, but all are of the same value. At this point the attorney for the defendant moved to dismiss this appeal to reappraisement on the grounds in substance that the plaintiff had failed to prove all the elements necessary to establish either a foreign or an export value and that it had specifically failed to prove the market price and the value at the time of exportation of such merchandise to the United States, of such or similar merchandise freely offered for sale to all purchasers in the principal markets of the country of exportation, or the usual wholesale quantities, in the ordinary course of trade for exportation to the United States. This motion was taken under advisement.

It will be noted that the attorney for the defendant did not rest his case upon this motion but introduced Exhibit 5 in behalf of the defendant. After carefully considering this record said motion to dismiss is overruled and an exception to this ruling is hereby given the attorney for the defendant.

After carefully considering Exhibit 4, the affidavit of the said Otto Schlosser, shipper of the instant merchandise, I am of the opinion that it is of no probative value at all, and if so, it certainly is of no assistance to the plaintiff in establishing export value of said merchandise. Paragraph 2 of said affidavit is as follows:

2. This string at 40¢ is made *especially* for Mr. Quall, and if we could use this same string on our German market here, we should sell it at the same price. Therefore the price of 40¢ per gross is corresponding to the German market price for this string. [Italics mine.]

If this statement could be substantiated by sufficient probative evidence, then it would appear that the proper dutiable basis for the appraisement of this merchandise would be cost of production, but there is not a scintilla of evidence in this case that would in any wise establish cost of production.

I have carefully examined Exhibit 5 in this case and am unable to find any probative evidence that would be of any benefit to the plaintiff in the establishment of export value of the merchandise. It is true that at the top of page 2 of said report the special agent states: "The merchandise is freely offered to all purchasers for export to the United States." This is a mere statement of the special agent and is not corroborated by any probative evidence to support same. Also,

this statement, even it it were supported by sufficient evidence, contradicts the statement made by said Otto Schlosser in paragraph 2 of his affidavit in Exhibit 4.

It should be borne in mind that it is the contention of the attorneys for the plaintiff and defendant that export value is the proper basis for the appraisement of the instant merchandise. The definition of export value, so far as pertinent to this case, is defined in the Tariff Act of 1930 as follows:

Sec. 402. (d) Export Value.—The export value of imported merchandise shall be the market *value* or the *price*, at *the time of exportation* of such merchandise to the United States, at which *such* or *similar* merchandise is *freely offered for sale to all purchasers* in the principal markets of the country from which exported, in the usual *wholesale quantities and in the ordinary course of trade*, for exportation to the United States * * *. [Italics mine.]

It will be seen from a careful reading of the above definition of export value that there are several requirements that are incumbent upon the plaintiff to establish export value and to overcome the presumption of correctness attaching to the action of the appraiser in appraising the merchandise. These requirements have been stated in many opinions by our appellate court but perhaps one of the clearest opinions on this point so far decided is the case of *United States* v. *Downing*, 20 C. C. P. A. 251, T. D. 46057. This case was decided under the Tariff Act of 1922, which act did not provide any presumption of correctness should attach to the action of the appraiser in appraising merchandise, but under section 501 of the Tariff Act of 1930, which was in operation at the time of the importation of the instant merchandise, it specifically provides that the value found by the appraiser is presumptively correct.

I am unable to find sufficient evidence in this record to prove that the market value or price at the time of the exportation of the instant merchandise to the United States at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, was the price or value claimed by the plaintiff in this case. I am also decidedly of the opinion that it is not sufficient to overcome the presumption of correctness attaching to the action of the appraiser in the appraisement of the instant merchandise.

Said appeal to reappraisement is therefore dismissed. Judgment will be rendered accordingly.